# Richmond.

## COMMONWEALTH V. GLEASON AND OTHERS.

### November 17, 1910.

#### Absent, Cardwell, J.

1. MUNICIPAL CORPORATIONS—*Officers—Railroad Employees as Council-men—"Free Passes"—Constitution, Sec.* 161.—An employee of a railroad company who receives a pass over the road as a part of the compensation for his services is not thereby rendered ineligible to the office of councilman in a city council by section 161 of the Constitution which declares that any officer who accepts of a transportation or transmission company any frank or free pass shall thereby forfeit his office. A "free pass" is one not obtained by importunity or purchase; gratuitous; and a "frank," as defined by section 153 of the Constitution, is "any writing or token issued by, or under authority of, a transmission company, entitling the holder to any service from such company free of charge." The pass in this instance is neither a "free pass" nor a "frank" within the meaning of the Constitution.

2. OFFICERS—*Servants of Corporations.*—The legislature has not declared that servants of corporations may not become public officers, and it is beyond the province of courts to do so.

3. QUO WARRANTO—*Effect of Expiration of Term.*—Where the term of an officer expires pending a *quo warranto* proceeding to test his right to hold it, the proceeding will be dismissed.

Error to a judgment of the Circuit Court of the city of Clifton Forge in a *quo warranto* proceeding. Judgment for the defendants. Commonwealth appeals.

*Affirmed.*

The opinion states the case.

*Samuel W. Williams, Attorney-General* and *John W. Bear,* for the Commonwealth.

*John A. Bowles, O. B. Harvey, J. M. Perry* and *R. L. Parrish,* for the defendants in error.

Keith, P., delivered the opinion of the court.

The attorney for the Commonwealth presented to the judge of the Circuit Court of the city of Clifton Forge an information in the nature of a *quo warranto,* which sets forth that J. A. Gleason, W. S. Taylor, T. P. Haloran and A. N. McMullen are employees of the Chesapeake and Ohio Railway Company; that they are residents of the city of Clifton Forge, and members of the city council, duly elected and qualified as such; and that while members of the city council they have received and now hold franks, free passes or free transportation from the Chesapeake and Ohio Railway Company; that they have traveled on these passes since their election and qualification as councilmen of the city of Clifton Forge; and that on business other than the company's they have accepted rebates and reductions of charges from said company not granted to the general public; that the parties above named are offering themselves and their service to the public as duly qualified officers, and are discharging the duties of the office of councilmen of the city; that the said acts on the part of the parties named are unlawful and in open defiance of the Constitution of the Commonwealth of Virginia, section 161, which provides that "No transportation or transmission company doing business in this State shall grant to any member of the General Assembly, or to any State, county, district, or municipal officer, except to members and officers of the State Corporation Commission for their personal use while in office, any frank, free pass, free transportation, or any rebate or reduction in rates

charged by such company to the general public for like service. For violation of the provisions of this section the offending company shall be liable to such penalties as may be prescribed by law; and any member of the General Assembly, or any such officer, who shall, while in office, accept any gift, privilege or benefit as is prohibited by this section, shall thereby forfeit his office, and be subject to such further penalties as may be prescribed by law."

Upon the filing of this information, an order was entered by the circuit court requiring the parties named to answer and show by what authority they continued to hold and exercise the functions of councilmen of the city of Clifton Forge, and to show cause, if any they could, why they should not be ousted from said office.

The defendants appeared and denied that they held "any frank, free pass, free transportation, or have been .granted any rebate or reduction in the rates charged to the general public for like services, from any transportation or transmission company doing business in the State of Virginia;" and they deny "that they, and each of them, are in any wise ineligible to hold and occupy their said office, by reason of any provision of the laws of Virginia." They further allege in their answer that during their terms of office, and since their election and qualification to said office, they and each of them have been continuously employees of the Chesapeake and Ohio Railway Company, giving their entire time and attention to said employment for the sake of the compensation therefrom derived.

Evidence was taken, from which it appears that the defendants are members of the city council, and that they are employees of the Chesapeake and Ohio Railway Company. They admit that they have passes from that company, but deny that they are free passes within the meaning of the law, but contend that the passes are a part of the compensation which they receive from the Chesapeake and Ohio

Railway Company for their services. Gleason, one of the parties defendant, was put upon the stand by the Commonwealth to prove its case, and was asked if he was in the employment of the Chesapeake and Ohio Railway Company, to which he replied that he was.

"Q. Have you received a pass from that company since having been elected to office as councilman for the city of Clifton Forge? A. Yes, sir."

. "Q. Have you paid the company anything for the pass? A. Am I to understand if I have paid them any money for the pass?"

"Q. Yes, sir. A. No, sir."

"Q. Have you ridden on this pass since you received it? A. Yes, sir."

"Q. On business other than the company's? A. Yes, sir."

On cross-examination he was asked:

"Q. Mr. Gleason, you have been in the service of this company continuously for the past two years, or since September 1, 1907? A. Yes, sir."

"Q. During that whole time you have held these passes? A. Yes, sir."

"Q. What is the consideration for those passes? You have stated it was not money. A. It is in consideration of my services as chief train dispatcher of the Chesapeake and Ohio Railway Company."

All the witnesses proved substantially the same facts—that the passes which they have received and used are not free, or not gratuitous, but are given them as a part of the wages or compensation for the services which they render to the company.

Upon these facts the circuit court dismissed the petition, and thereupon the Commonwealth applied for and obtained a writ of error to this court.

, It is insisted that the court erred in its construction of section 161 of the Constitution, "when it held that a frank,

free pass, or free transportation, means nothing more or less than a gratuity—a grant of a privilege without receiving compensation therefor."

The inhibition in the Constitution is upon the granting of any "frank, free pass, free transportation, or any rebate or reduction in rates charged by such company to the general public for like service."

Section 153 of the Constitution gives a definition of the term "frank," which it declares "shall be construed to mean any writing or token. issued by, or under authority of, a transmission company, entitling the holder to any service from such company free of charge."

"Free," as defined by Webster, means, "Not gained by importunity or purchase; gratuitous; spontaneous; as *free* admission, a *free* gift.

As the words are to be taken as having been used in their ordinary acceptation, a "free pass" is one which is not gained by importunity or purchase; gratuitous; and a "frank" as declared by section 153, is a writing or token issued by a transmission company, entitling the holder to some service from the company free of charge.

Upon the letter of the law, it seems plain that the judgment of the circuit court is right.

It is contended, however, that the defendants, being at the same time public officers and servants of a corporation, are trying to serve two masters, in which position, should a conflict arise between the respective interests represented, if true to their official obligations, they will necessarily have to prove themselves ingrates to the railway company, the very object or condition which the Constitution seeks to avoid.

That may be a very good reason for a change in the law, but is a very insufficient reason as addressed to a court whose duty it is, not to make, but to interpret the law as written. It is entirely within the province of the legislature to impose such qualifications and disabilities upon officers of muni-

cipal corporations as would meet the views of the Commonwealth, as expressed in its petition and briefs filed in this case, but it has not as yet seen fit to do so.

The evidence before us does not prove the offense. Every witness was introduced by the Commonwealth, and they prove with one voice that the passes which they received and used were not free passes, but were given in part compensation for services rendered.

It seems that as to all of the defendants in error, except Gleason, their terms of office have expired. As to them, therefore, the case must be dismissed; and as to Gleason it is affirmed.

*Affirmed.*